UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| CHRIS MUCZYNSKI, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) |  |
| JACK LIEBLICK, | ) | Case No. 10-cv-0081 |
| DETECTIVE WRONKOWSKI, | ) |  |
| JEFFREY LOQUERCIO, | ) | Judge John W. Darrah |
| CITY OF CHICAGO, SERGEANT GRECO, | ) |  |
| VILLAGE OF MELROSE PARK, and | ) |  |
| MIKE FARMER, | ) |  |
| Defendants. | ) |  |

## MEMORANDUM OPINION AND ORDER

Plaintiff, Chris Muczynski, filed this action against the City of Chicago, the Village of Melrose Park, various police officers, and Mike Farmer. In a First Amended Complaint, he alleged that he was falsely arrested and charged with a crime he did not commit. The City of Chicago, along with Chicago Police Officers Jack Lieblick, Detective Wronkowski, Patrick Masuda, and Jeffrey Loquercio, then filed a motion to dismiss two of the counts in Plaintiff's First Amended Complaint. The Village of Melrose Park, along with Melrose Park Police Officers Sergeant Greco and Darrell Farmer, also filed a motion to dismiss all counts against them.[1] (All individual Defendants – excluding Mike Farmer, who is not a police officer – are hereinafter

---

[1] Plaintiff later voluntarily dismissed all claims against Darrell Farmer and Patrick Masuda.

referred to as "Defendant Officers.") These motions were granted in part and denied in part in a Memorandum Opinion and Order entered on August 19, 2010 (the "August 19 Opinion"). Among the claims dismissed was Plaintiff's class-of-one equal-protection claim.

On September 21, 2010, Plaintiff filed a Second Amended Complaint, again purporting to state a class-of-one equal-protection claim; both sets of Defendants now again move separately to dismiss. For the reasons stated below, both motions are granted.

## BACKGROUND

The following facts are taken from Plaintiff's Second Amended Complaint and are accepted as true for purposes of resolving these motions to dismiss. On January 11, 2008, three individuals were sprayed with mace at 3132 N. Harlem Avenue in Chicago, Illinois. 2d Am. Compl. ¶ 8. Defendant Greco (of the Melrose Park Police Department) and Defendants Lieblick, Wronkowski, and Loquercio (of the Chicago Police Department) communicated sometime during the two weeks following the incident; and Defendant Greco identified Plaintiff as the person responsible for the incident. 2d Am. Compl. ¶¶ 9-10.

On January 27, 2008, Plaintiff was arrested at his home by some of the Defendant Officers. 2d Am. Compl. ¶¶ 13-14. He was charged with three counts of battery in a criminal complaint signed by the three victims. See 2d Am. Compl. ¶¶ 16-17. The

charges were later dismissed after the complaining witnesses withdrew their complaints.[2]
2d Am. Compl. ¶ 15. Each of the witnesses had signed the criminal complaint based on misrepresentations made to them by Defendants Loquercio, Wronkowski, and Lieblick. 2d Am. Compl. ¶ 17. Defendants Loquercio, Wronkowski, and Lieblick intimidated and coerced them into fabricating statements against Plaintiff. 2d Am. Compl. ¶ 18. Defendants Loquercio, Wronkowski, and Lieblick also falsified police reports and other documentation in the course of charging Plaintiff with criminal activity. 2d Am. Compl. ¶ 19. Each of the named Defendant police officers (Loquercio, Wronkowski, Lieblick, and Greco) knew that Plaintiff was not the individual who battered the complaining witnesses.[3] 2d Am. Compl. ¶¶ 11-12.

Sometime before the criminal charges against Plaintiff were dropped, Defendant Mike Farmer –not a police officer – admitted responsibility for the criminal activity of which Plaintiff had been accused. 2d Am. Compl. ¶ 29. Farmer was never arrested or charged for his actions. 2d Am. Compl. ¶ 29.

All of the individual Defendants conspired against Plaintiff by agreeing to falsely arrest him, agreeing to falsely institute criminal proceedings against him, agreeing to cause false charges to be lodged against him, agreeing not to report each other for these

---

[2] In his opposition brief, Plaintiff asserts that the complaining witnesses "recanted their complaints against Plaintiff when they saw him in criminal court." Pl. Opp'n Br. 1-2. This was not pled. The Second Amended Complaint simply alleges that the charges were dismissed after the complaining witnesses indicated their desire to withdraw the criminal charges against Plaintiff. 2d Am. Compl. ¶ 16.

[3] The Second Amended Complaint does not allege that Defendants knew of Plaintiff's innocence before Plaintiff's arrest on January 27, 2008.

3

violations, and generating false documentation to cover up for their misconduct. 2d Am. Compl. ¶ 32.

Plaintiff concludes that he was treated with ill will and arrested without any rational basis because of animosity held by some of the Defendant Officers based on the following: Plaintiff worked at the Village of Melrose Park Police Department from December 2004 through December 2005 as an auxiliary police officer. 2d Am. Compl. ¶ 37. During the course of that employment, he arrested Defendant Mike Farmer – the son of a Melrose Park police officer (Darrell Farmer) – on numerous occasions. 2d Am. Compl. ¶ 38. Mike Farmer therefore developed a dislike towards Plaintiff, as did Defendant Greco and other Melrose Park police officers. 2d Am. Compl. ¶ 39. Defendant Greco then "communicated and relayed said animus to the City of Chicago individual Defendant Officers Loquercio, Wronkowski and Lieblick sometime between January 11, 2008 and January 27, 2008." 2d Am. Compl. ¶ 40. The Chicago Defendant Officers "acted pursuant to this dislike and animus towards Plaintiff when they conspired with the Village of Melrose Park, Sergeant Greco and Mike Farmer to arrest, criminally prosecute and falsify evidence and/or documentation against Plaintiff." 2d Am. Compl. ¶ 41. Plaintiff claims, *inter alia*, that the aforementioned conduct violated his right to equal protection under the law.

Plaintiff pleads he is similarly situated to "other individuals involved in incidents with police officers who were stopped and investigated by police officers" and that those similarly situated individuals did not have false evidence generated against them and were not arrested and prosecuted. 2d Am. Compl. ¶¶ 42-44. And each of the Defendant

Officers had arrested over twenty individuals prior to arresting Plaintiff without falsifying any evidence or reports. 2d Am. Compl. ¶¶ 45-47.

## LEGAL STANDARD

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." To meet Rule 8(a)(2)'s requirements, the complaint must describe the claim in sufficient detail to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (*Twombly*) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The allegations in the complaint "must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'; if they do not, the plaintiff pleads itself out of court." *Equal Employment Opportunity Comm'n v. Concentra Health Servs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007) (citing *Twombly*, 550 U.S. at 555, 569 n.14).

In addressing a motion to dismiss for failure to state a claim, the court must accept as true all well-pleaded factual allegations and draw reasonable inferences in favor of the plaintiff. *Sprint Spectrum L.P. v. City of Carmel, Ind.*, 361 F.3d 998, 1001 (7th Cir. 2004). However, "[w]here the well-settled pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009) (*Iqbal*). For a claim to be plausible, the plaintiff must put forth enough "facts to raise a reasonable expectation that discovery will reveal evidence" supporting

the plaintiff's allegations. *Brooks v. Ross*, 578 F.3d 574, 581 (*Brooks*) (quoting *Twombly*, 550 U.S. at 556).

The Seventh Circuit has summarized the requirements of a well-pleaded complaint as follows:

> First, a plaintiff must provide notice to defendants of her claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, in considering the plaintiff's factual allegations, courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Id.* at 581.

## ANALYSIS

To state a "class-of-one" claim for a constitutional violation of his right to equal protection of the laws, Plaintiff must allege (1) that Defendants treated him differently from others who are similarly situated and (2) that there is no rational basis for the different treatment or that he was treated differently because of the Defendants' "totally illegitimate animus" toward him.[4] *McDonald v. Village of Winnetka*, 371 F.3d 992, 1001 (7th Cir. 2004) (*McDonald*).

Equal-protection claims are claims of discrimination: "The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against intentional and arbitrary discrimination, whether by express terms of a statute or by its improper execution through duly constituted agents."

---

[4] As discussed below, Seventh Circuit law is not settled as to whether animus is a required element of a class-of-one equal-protection claim; but the standard set forth in *McDonald* is often cited in cases involving class-of-one claims.

6

*Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (*Olech*) (quoting *Sioux City Bridge Co. v. Dakota County*, 260 U.S. 441 (1923)) (internal quotation marks omitted); *see also Reget v. City of LaCrosse*, 595 F.3d 691, 695 (7th Cir. 2010) (*Reget*) ("The Equal Protection Clause of the Fourteenth Amendment prohibits state action that discriminates on the basis of membership in a protected class or irrationally targets an individual for discriminatory treatment as a so-called 'class of one.'") (quoting *Engquist v. Or. Dep't of Agric.*, 553 U.S. 591, 601-02 (2008); *Olech*, 528 U.S. at 564).

In dismissing Plaintiff's First Amended Complaint, the Court held that Plaintiff failed to plead either of the elements necessary to state a class-of-one equal-protection claim. First, Plaintiff failed to allege that he was treated differently than others who were similarly situated. Second, the First Amended Complaint was "devoid of any factual allegations to support a claim that five Defendant Officers from two separate police departments sought to deprive Plaintiff of equal protection of the laws based on their personal animus toward him." August 19 Opinion, at 8. Third, the allegations in the First Amended Complaint did not "successfully negate any conceivable state of facts that could provide a rational basis for Plaintiff's arrest and prosecution," as required by *Lauth v. McCollum*, 424 F.3d 631, 634 (7th Cir. 2005). *Id.* Specifically, Plaintiff's conclusory allegations were undercut by allegations "that the arrest took place after three eyewitnesses (the victims, themselves) signed a complaint against him." *Id.*

Plaintiff attempts to revive his class-of-one claim by again amending his complaint. He now claims he is similarly situated to persons who were not arrested on the basis of falsified information. He alleges that Defendant Greco developed an animus

toward him and communicated that animus to Defendants Loquercio, Wronkowski and Lieblick, who then acted pursuant to *Defendant Greco's* animus, coerced the complaining witnesses into making false statements against Plaintiff, and arrested Plaintiff on the basis of those false statements. He also alleges that the complaining witnesses were coerced into signing the criminal complaint.[5]

These amended allegations still fail to state a claim for relief. First, to the extent animus is a necessary element of a class-of-one claim, Plaintiff does not sufficiently allege it. The Defendant with the alleged animus (Greco) is not alleged to have coerced the witness statements and arrested Plaintiff, and the Defendants who allegedly coerced the witness statements and arrested Plaintiff (Loquercio, Wronkowski and Lieblick) are not alleged to have held any personal animus toward Plaintiff. Plaintiff's theory of "transferred animus," as Defendants call it, has no apparent basis in existing law or reason.

As mentioned above, the law of the Seventh Circuit is not clear as to whether animus is a necessary element, however. Some cases have stated that a plaintiff must show *either* that there is no rational basis for the different treatment *or* that he was treated differently because of the Defendants' "totally illegitimate animus" toward him. *See, e.g., McDonald*, 371 F.3d at 1001. Others have characterized class-of-one cases as "vindictive action" cases that require "proof that the cause of the differential treatment of

---

[5] Plaintiff's Second Amended Complaint fails to specify whether Plaintiff's arrest followed the issuance of the criminal complaint. The Melrose Park Defendants' initial brief asserts that Plaintiff was arrested on the complaint of the complaining witnesses. *See* Melrose Park Def. Mot. to Dismiss 5. Plaintiff's response does not object to this statement and implies this was the case. *See* Pl. Opp'n Br. 5, 7.

which the plaintiff complains was a totally illegitimate animus toward the plaintiff by the defendant." *See Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000). Thus far, the Seventh Circuit has not reconciled the conflict. *See Reget*, 595 F.3d at 695.

But Plaintiff's claim fails for another reason. He fails to sufficiently allege the first required element of a class-of-one equal-protection claim: that Defendants treated him differently than similarly situated individuals. In an effort to remedy the complete lack of allegations regarding any similarly situated individuals in his First Amended Complaint, Plaintiff now claims he was similarly situated to "other individuals involved in incidents with police officers who were stopped and investigated by police officers" and to other individuals with whom the Defendant Officers had an investigatory basis to communicate who did not have false evidence generated against them and were not arrested or prosecuted. 2d Am. Compl. ¶¶ 42-44. These allegations are nothing more than inadequate, "abstract recitations of the elements of a cause of action or conclusory legal statements" that the *Brooks* court held to be unacceptable. *See Brooks*, 578 F.3d at 581. This is particularly so considering the unique, coordinated and attenuated, conspiratorial misconduct between four police officers from two separate police departments alleged in the Second Amended Complaint as the basis of Plaintiff's class-of-one claim.

A person asserting a class-of-one equal-protection claim must allege that he and his comparators are "*prima facie* identical in all relevant respects or directly comparable . . . in all material respects." *United States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008) (*Moore*) (quoting *Racine Charter One, Inc. v. Racine Unified Sch. Dist.*,

424 F.3d 677, 680 (7th Cir. 2005)). "Although this is not a 'precise formula,' it is nonetheless 'clear that similarly situated individuals must be very similar indeed.'" *Id.* at 896-97 (citing *McDonald*, 371 F.3d at 1002).

In *Olech*, the Supreme Court held that a plaintiff could state an equal-protection claim as a "class of one." 528 U.S. at 564-65. The plaintiffs alleged that the village of which they were residents refused to connect their property to the municipal water supply unless they granted a 33-foot easement. *Id.* at 563. Other residents were connected after granting 15-foot easements. *Id.* The Supreme Court held that the allegations were sufficient to state a claim for relief under traditional equal-protection analysis. *Id.* at 565.

The Seventh Circuit has recognized class-of-one claims before and after *Olech*. In *Hanes v. Zurich*, 578 F.3d 491, 492 (7th Cir. 2009), one of two feuding neighbors alleged that regardless of who called the police, officers always showed up and arrested the plaintiff because they did not like him. The plaintiff had been arrested at least eight times; his neighbor, never. *Id.* The Seventh Circuit held that the plaintiff stated a claim under a class-of-one theory. *Id.* at 496. In *Ciechon v. City of Chicago*, 686 F.2d 511, 515-16 (7th Cir. 1982), paramedics responded to a 9-1-1 call and treated a victim who later died. After the victim's family publicly criticized the manner in which the situation was handled, one of the paramedics was suspended and fired. *Id.* at 516. The other paramedic who responded to the call was equally responsible for patient assessment and treatment and suffered no consequences. *Id.* at 522-23. The Seventh Circuit affirmed the district court's grant of summary judgment for the plaintiff, holding that "[t]here was no

possible justification for treating [the similarly situated paramedics] differently."[6] *Id.* at 523. In both of these cases, the discriminatory nature of the plaintiffs' claims could be ascertained by comparing the plaintiffs to similarly situated individuals who were treated more favorably.

Without such a comparison, the requisite allegations of discrimination are lacking. In *Bell v. Duperrault*, 367 F.3d 703, 705 (7th Cir. 2004) (*Bell*), a landowner made a request to the Wisconsin Department of Natural Resources to extend his pier. The Department denied his request and required him to pursue the process through an administrative hearing. *Id.* at 706. The Seventh Circuit affirmed entry of summary judgment for the department because the landowner failed to show that anyone whose petition was granted was similarly situated in terms of the content and timing of their requests. *Id.* at 707. In *McDonald*, the plaintiff's house caught fire twice within two days. 371 F.3d at 994-96. After conducting an investigation, the village of which he was a resident attributed the second fire to arson. *Id.* at 998. The plaintiff claimed that the village discriminated against him by not ruling out all non-arson causes before making an arson determination. *Id.* at 1003. Among other things, the Seventh Circuit held that the plaintiff presented no evidence of any other fire for which evidence of arson was as strong or for which evidence of a non-arson cause was of similar or lesser weight and, thus, no evidence of similarly situated persons. *Id.* at 1005-06. In *Reget*, the owner of a body shop sued the city and city officials, alleging that the city's selective enforcement of its junk-dealer ordinance violated his right to equal protection. 595 F.3d at 694. The

---

[6] The Supreme Court has since held that class-of-one theories of equal protection have "no place in the public employment context." *Engquist*, 553 U.S. at 594.

Seventh Circuit held that he failed to identify a similarly situated comparison property in his neighborhood that was treated more favorably by the city. *Id.* at 696.

Although *Bell*, *McDonald*, and *Reget* were decided on motions for summary judgment, the rationale behind the decisions is instructive. Plaintiff's claim here does not fail at this stage for lack of proof. Rather, it fails for lack of sufficient allegations to raise the possibility that Plaintiff has any comparators who are "*prima facie* identical in all relevant respects." *Moore*, 543 F.3d at 896. Plaintiff's allegations regarding others similarly situated, but treated more favorably, fall short of this standard. In short, Plaintiff has not adequately pled the comparators that the plaintiffs in *Bell*, *McDonald*, and *Reget* pled but failed to prove.

Plaintiff seeks to compare himself to persons who were stopped and investigated by unknown police officers and persons with whom these specific Defendant Officers had an investigatory basis to communicate. Such individuals, however, are not similarly situated to Plaintiff, who, while "peacefully enjoying the security of his home," was arrested without probable cause that he committed any crime. *See* 2d Am. Compl. ¶¶ 11-13. As Plaintiff argues, "What distinguishes [his] claim from the garden-variety false-arrest or malicious-prosecution claims are Plaintiff's allegations of falsification of evidence and documents and of intimidation of and coercion of complaining witnesses." Pl. Opp'n Br. 7-8. The harm Plaintiff alleges is that he was arrested on false charges while enjoying the peace of his own home. Similarly situated individuals not subject to that harm would include every other person enjoying the peace of his own home who was not arrested on false charges.

Unlawful as Defendants' alleged conduct may be, it cannot legally be classified as discrimination for purposes of maintaining a class-of-one equal-protection claim. Plaintiff may have been denied certain *protections* of the law, but his allegations do not show he was denied *equal* protection of the law. It is the presence of *unequal* treatment that implicates equal-protection rights. Without alleging sufficient "facts to raise a reasonable expectation that discovery will reveal evidence" that he was treated less favorably than similarly situated individuals, *cf. Brooks*, 578 F.3d at 581, Plaintiff fails to state a claim for discrimination.

As the Seventh Circuit has explained, the requirement to allege and prove that "similarly situated" persons were treated differently is necessary to prevent class-of-one claims from constitutionalizing all tort law:

> The reason that there is a "similarly situated" requirement in the first place is that at their heart, equal protection claims, even "class of one" claims, are basically claims of discrimination. Even if McDonald was wronged here, we do not believe that he has shown the wrong to be discriminatory in nature. Every time an actor commits a tort, he may be treating the victim differently than he frequently treats others, simply because tortious conduct is by nature a departure from some norm. Nonetheless, the purpose of entertaining a "class of one" equal protection claim is not to constitutionalize all tort law nor to transform every claim for improper provision of municipal services or for improper conduct of an investigation in connection with them into a federal case. Therefore, we believe a meaningful application of the "similarly situated" requirement is important to avoiding a distortion of the scope of protection in "class of one" equal protection claims.

*McDonald*, 371 F.3d at 1009.

The reasoning of *McDonald* is persuasive. If Plaintiff's allegations here are held to be sufficient to state an equal-protection claim, then a vast number of intentional torts

by state actors would also be the basis of such claims. This is particularly true in light of the unsettled nature of whether illegitimate animus is a required element in this circuit.

Indeed, if animus is not a required element and a plaintiff could satisfy the discrimination requirement simply by alleging that other law-abiding persons were not subject to unlawful treatment, the scope of class-of-one claims would be distorted to include almost any intentional tort committed by a state actor. An officer who arrests someone without probable cause or uses unreasonable force on an arrestee is certainly treating the victim differently than persons who have not been subject to false arrest or excessive force; and, almost by definition, those illegal acts are undertaken without a rational basis in the law. Class-of-one equal-protection claims must be limited to those in which the plaintiff pleads, with requisite specificity, that similarly situated persons were not subject to the specific conduct of which the plaintiff complains. Strict enforcement of this requirement ensures that the scope of such claims can be properly controlled and the potential of constitutionalizing all tort law on the basis of equal protection, avoided.

## CONCLUSION

For the reasons stated above, Defendants' motions to dismiss are granted. Count I is dismissed in its entirety.

Date: February 11, 2011

JOHN W. DARRAH
United States District Court Judge